CASE NO. 14-50037
_____

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
_____

DONNIKA IVY; BERNARDO GONZALEZ; TYLER DAVIS, AS NEXT
FRIEND OF JUANA DOE, A MINOR; ERASMO GONZALEZ; ARTHUR
PROSPER, IV,
Plaintiffs-Appellees

v.

COMMISSIONER MICHAEL WILLIAMS, IN HIS OFFICIAL CAPACITY
AS HEAD OF THE TEXAS EDUCATION AGENCY,
Defendant-Appellant
_____

BRIEF FOR AMICI CURIAE IN SUPPORT OF APPELLEES ON BEHALF OF
DISABILITY RIGHTS TEXAS, ADAPT, AND THE DEAF ACTION CENTER
SUPPORTING AFFIRMANCE OF THE DISTRICT COURT
_____

FULBRIGHT & JAWORSKI LLP
Jamie Richards Whitney
Texas State Bar No. 24056202
Robert R. Rouder
Texas State Bar No. 24037400

98 San Jacinto Blvd., Suite 1100
Austin, TX 78701
Tel: (512) 536-5298
Fax:  (512) 536-4598
jamie.whitney@nortonrosefulbright.com
robert.rouder@nortonrosefulbright.com

COUNSEL FOR AMICI CURIAE

CASE NO. 14-50037
_____

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
_____

DONNIKA IVY; BERNARDO GONZALEZ; TYLER DAVIS, AS NEXT
FRIEND OF JUANA DOE, A MINOR; ERASMO GONZALEZ; ARTHUR
PROSPER, IV,
Plaintiffs-Appellees

v.

COMMISSIONER MICHAEL WILLIAMS, IN HIS OFFICIAL CAPACITY
AS HEAD OF THE TEXAS EDUCATION AGENCY,
Defendant-Appellant
_____

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule of Court 28.2.1, the undersigned counsel of record
certifies that the following listed persons have an interest in the outcome of this
case.  These representations are made in order that the judges of this Court may
evaluate possible disqualification or recusal.

**Defendant-Appellant**
Commissioner Michael Williams, in his official capacity as head of the Texas
Education Agency

**Counsel for Defendant-Appellant**
Greg Abbott
Attorney General of Texas
Daniel T. Hodge
First Assistant Attorney General
Jonathan F. Mitchell
Solicitor General
Richard B. Farrer
Assistant Solicitor General
Office of the Attorney General
PO Box 12548 (MC 059)
Austin, Texas 7871102548

i

**Plaintiffs-Appellees**

Donnika Ivy
Bernardo Gonzalez
Tyler Davis, as next friend of Juana Doe, a minor
Erasmo Gonzalez
Arthur Prosper, IV

**Counsel for Plaintiffs-Appellees**

Joe T. Sanders II
Olga Kobzar
Scott Douglass & McConnico, L.L.P.
600 Congress Ave., Suite 1500
Austin, TX 78701

Joseph P. Berra
James C. Harrington
Wayne Krause Young
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741-3438

**Amici Curiae**

Disability Rights Texas
ADAPT
Deaf Action Committee

**Counsel for Amici Curiae**

Jamie Richards Whitney
Bob Rouder
Fulbright & Jaworski LLP
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701

Respectfully submitted,

/s/Jamie Whitney
Jamie Whitney

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amici curiae Disability Rights Texas, ADAPT, and the Deaf Action Center submit the following corporate disclosure statement:

Disability Rights Texas is a not-for-profit organization under Section 501(c)(3) of the Internal Revenue Code.  It has not issued any shares or debt securities to the public and has no parent companies, subsidiaries, or affiliates that have issued any shares or debt securities to the public.

ADAPT is a not-for-profit organization under Section 501(c)(3) of the Internal Revenue Code.  It has not issued any shares or debt securities to the public and has no parent companies, subsidiaries, or affiliates that have issued any shares or debt securities to the public.

The Deaf Action Center is a not-for-profit organization under Section 501(c)(3) of the Internal Revenue Code.  It has not issued any shares or debt securities to the public and has no parent companies, subsidiaries, or affiliates that have issued any shares or debt securities to the public.

# Table of Contents

Page

CORPORATE DISCLOSURE STATEMENT .........................................................3

Table of Authorities ..............................................................................................5

   I.    INTEREST OF AMICI...................................................................................1

   II.   INTRODUCTION .........................................................................................2

   III.   ARGUMENT AND AUTHORITIES.........................................................6

      A.   Case Law and Regulations Concerning Administration of Licensing Programs Are Inapposite.......................................................................................6

      B.   TEA Is Required to Ensure Its Licensees Comply With Its Delegated Obligations Under Title II and Section 504........................................................8

   IV.   CONCLUSION.........................................................................................11

CERTIFICATE OF COMPLIANCE................................................................... viii

CERTIFICATE OF SERVICE ............................................................................. ix

iv

# Table of Authorities

**Page(s)**

## Cases

*Armstrong v. Schwarzenegger*,
622 F.3d 1058 (9th Cir. 2010) ..............................................................................5

*Hahn ex rel. Barta v. Linn Cnty., Iowa*,
191 F. Supp. 2d 1051 (N.D. Iowa 2002) ...............................................................5

*Castle v. Eurofresh, Inc.*,
731 F.3d. 901 (9th Cir. 2013) ............................................................................5, 8

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984)...............................................................................................9

*Deck v. City of Toledo*,
56 F. Supp. 2d 886 (N.D. Ohio 1999) ...................................................................6

*Frame v. City of Arlington*,
657 F.3d 215 (5th Cir. 2013) ........................................................................3, 5, 6

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003) .............................................................................5, 8

*Hunter v. District of Columbia*,
No. 12-1960(GK), 2014 U.S. Dist. LEXIS 114075 ...................................5, 8, 10

*Indep. Hous. Servs. v. Fillmore Ctr. Assocs.*,
840 F. Supp. 1328 (N. D. Cal., 1993)....................................................................7

*James v. Peter Pan Transit Mgmt., Inc.*,
No. 97-747, 1999 U.S. Dist. LEXIS 2565 (E.D. N.C. Jan. 20,
1999) ..................................................................................................................6, 8

*Kerr v. Heather Gardens Ass'n*,
2010 U.S. Dist. LEXIS 99020 (D. Colo. 2010).........................................5, 9, 10

*Noel v. New York City Taxi & Limousine Comm'n*,
687 F.3d 63 (2d Cir. 2012) ................................................................................4, 7

*Reeves v. Queen City Transp.*,
   10 F. Supp. 2d 1181 (D. Colo. 1998).....................................................................7

*Tyler v. City of Manhattan*,
   849 F. Supp. 1429 (D. Kan. 1994).........................................................................7

*Van Velzor v. City of Burleson*,
   2014 U.S. Dist. LEXIS 122899 ............................................................................9

**Rules and Statutes**

26 U.S.C. 501(c)(3)..................................................................................................3

29 U.S.C. 794(a) .................................................................................4, 5, 8, 9, 10, 11

42 U.S.C. 12132.............................................................................4, 5, 7, 8, 9, 10, 11

42 U.S.C. 12182(a) .......................................................................................7, 9, 10

42 U.S.C. § 12101(a)(3)...........................................................................................4

42 U.S.C. § 12101(a)(7)...........................................................................................3

5 Cir. Loc. R. 32.2....................................................................................................6

Fed. R. App. Proc. 26.1............................................................................................3

Fed. R. App. Proc. 32(a)(5).......................................................................................6

Fed. R. App. Proc. 32(a)(6).......................................................................................6

Fed. R. App. Proc. 32(a)(7)(B) .................................................................................6

Fed. R. App. Proc. 32(a)(7)(B)(iii) ...........................................................................6

TEX. EDUC. CODE §§ 1001 *et seq.* ........................................................................3, 4

TEX. EDUC. CODE § 1001.051 ..................................................................................6

TEX. EDUC. CODE § 1001.151 ..................................................................................6

TEX. TRANSP. CODE § 521.142(d)..............................................................................3

TEX. TRANSP. CODE § 521.1601.............................................................................3, 4

## Other Authorities

28 C.F.R., Appx. A to Part 35 .................................................................................. 10

28 C.F.R. § 35.130(b)(1)(i) ..................................................................................... 10

H.R. Rep. No. 101-485(II), at 37 ............................................................................... 3

*Texas Educ. Agency Self-Report*, Sunset Advisory Commission, 83rd
    Legislature (Sept. 1, 2011), at 48, Exhibit 9 (*available at*
    *https://www.sunset.texas.gov/reviews-and-reports/agencies/texas-*
    *education-agency-tea,* last visited Sept. 11, 2014) .......................................... 6, 7

## I.    INTEREST OF AMICI[1]

Amici are united by their concern for the rights of people with disabilities and with public policy issues affecting the lives of those with handicaps.

Because all people have dignity and worth, **Disability Rights Texas** advocates for the rights of Texans with disabilities.  Disability Rights Texas seeks to ensure that people with disabilities are free from neglect, exploitation, discrimination and isolation. The group seeks to positively affect outcomes in community living, education, transportation, healthcare and employment of the disabled and seeks protections for the civil rights — including accessibility to goods and services — of those with disabilities.

The **Deaf Action Center** serves the more than half million people of Northern Texas whose hearing impairments affect their basic quality of life. Without regard to age or need, the Deaf Action Center provides education, resources, and services for the deaf and hard of hearing. As part of their advocacy efforts, the Deaf Action Center educates the hearing community on the special needs of their clients as well as performing communication and accommodation assessments of schools, medical facilities, and places of public access.

---

[1] No counsel for a party authored this brief in whole or in part, and no one other than Amici Curiae or their members or their counsel made a monetary contribution to the preparation or submission of this brief. All parties have consented to the filing of this brief.

ADAPT is a 31 year old nationwide grassroots network that advocates for disability rights with the objective of empowering those with disabilities to live independently and to access the resources that communities offer to their fully able citizens. ADAPT of Texas is the State-based affiliate that carries out the work of the national organization in Texas. With the mission of freeing disabled people from nursing homes and other institutions, ADAPT works to make communities more accessible in the areas of transportation, housing, public accommodations, and governmental buildings and programs.

All three organizations have joined as amici curiae to express to the Court that state-mandated driver education is not a private industry regulated by the state, but a state program licensed to private providers. "TEA-approved" driver education courses are a state prerequisite for independent transportation and mobility. The Texas Education Agency is the entity charged with ensuring meaningful access to this state program for qualified deaf Texans, and its partnership with private driver education schools does not affect the Agency's independent obligations under federal law.

## II.    INTRODUCTION

"The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals . . . ."  42 U.S.C. § 12101(a)(7).    Congress

2

has specifically found that transportation is a "critical area" affected by widespread discrimination against individuals with disabilities. *Id.* at (a)(3). In so finding, "Congress understood that accessible transportation is the 'linchpin' that 'promotes the self-reliance and self-sufficiency of people with disabilities.'" *Frame v. City of Arlington*, 657 F.3d 215, 230 (5th Cir. 2013) (citing H.R. Rep. No. 101-485(II), at 37). Inaccessible transportation is "'the major barrier' to work for disabled individuals," *Frame*, 657 F.3d at n.63 (citing H.R. Rep. No. 101-485(II), at 37), and prevents them from "exercis[ing] their rights and obligations as citizens." *Id.*

Driver education programs approved by the Texas Education Agency (TEA) are a state-mandated prerequisite to obtaining a first driver's license for all Texans aged 16 to 25. TEX. TRANSP. CODE § 521.142(d); TEX. TRANSP. CODE § 521.1601; TEX. EDUC. CODE §§ 1001 *et seq.* No Texan under the age of 25 can obtain an original driver's license without showing proof of completion of a TEA-approved course. TEX. TRANSP. CODE § 521.1601. Deaf Texans between the ages of 16 and 25 are routinely denied meaningful access to TEA-approved driver education courses, and therefore to driver's licenses. The lack of meaningful access to TEA-approved driver education programming is exactly the type of unreasonable barrier to transportation—and therefore, to independent participation in society—that Congress sought to eradicate through Title II and Section 504. *See* 42 U.S.C. § 12101(a)(3); 29 U.S.C. 794(a).

3

The District Court's well-reasoned December 18, 2013 Opinion cut to the heart of this matter: "The key question in this litigation is not the Agency's liability for the actions of its licensees, but the Agency's liability for the driver-education program it created, and whether the Agency's extensive and continuous involvement in the administration of the driver-education program makes it a 'service, program, or activity' of the Agency, which is within the scope of Title II of the ADA and Section 504." Opening Br. Appx. C, Order of December 18, 2013. TEA's arguments regarding standing and failure to state a claim depend entirely on the Agency's overly narrow definition of its responsibilities under Title II and Section 504.

TEA cannot claim it is "merely the entity charged with regulating and licensing private industry." *Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 72 (2d Cir. 2012). On the contrary, TEA is the entity charged with designing, regulating, and "approving" the state's mandatory driver education programs for Texans under the age of 25. *See generally* TEX. TRANSP. CODE § 521.1601; TEX. EDUC. CODE §§ 1001 *et seq.* TEA is thus the gatekeeper to one of the state's most important public activities—the licensing of new drivers. *See Frame*, 657 F.3d at 230-31 (discussing the economic and social impacts of accessible transportation to citizens with and without disabilities).

4

"Title II's obligations apply to public entities regardless of how those entities chose to provide or operate their programs and benefits." *Castle v. Eurofresh, Inc.*, 731 F.3d. 901, 910 (9th Cir. 2013).  (citing *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065-67 (9th Cir. 2010); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 286 (2d Cir. 2003)).  Thus, the fact that TEA licenses private driver education schools to provide "TEA approved" driver education programs does not insulate TEA from its obligations under federal law to maintain meaningful accessibility to those state-mandated programs.  *Castle*, 731 F.3d at 910.  TEA's reliance on cases concerning the licensing of private industry is inapposite, because what TEA is doing is licensing its own activity to private contractors.  *Kerr v. Heather Gardens Ass'n*,2010 U.S. Dist. LEXIS 99020 (D. Colo. 2010).  TEA's position that it has no obligation to ensure the compliance of licensees providing its state-mandated driver education  services has no support in the case law; in fact,  "all courts to address the issue have found that they have such an obligation." *Hunter v. District of Columbia*, No. 12-1960(GK), 2014 U.S. Dist. LEXIS 114075, *19-20 (collecting cases finding that a state cannot contract or delegate away its responsibility under Title II or Section 504).[2]

---

[2] *Hunter*, 2014 U.S.Dist. LEXIS 114075, at *19-20 (citing *Henrietta D.*, 331 F.3d at 284-86); *Hahn ex rel. Barta v. Linn Cnty., Iowa*, 191 F. Supp. 2d 1051, 1054 n. 2 (N.D. Iowa 2002); *James v. Peter Pan Transit Mgmt., Inc.*, No. 97-747, 1999 U.S. Dist. LEXIS 2565, *9 (E.D. N.C. Jan. 20, 1999); *Deck v. City of Toledo*, 56 F. Supp. 2d 886, 896 (N.D. Ohio 1999).

## III.    ARGUMENT AND AUTHORITIES

### A.    Case Law and Regulations Concerning Administration of Licensing Programs Are Inapposite

Counsel for Appellees have very ably illustrated how TEA's comprehensive regulation of the design and provision of driver education services falls well within this Court's analysis of the broad scope of state "programs, services, and activities" in *Frame*, 657 F.3d at 230.  *See* Appellees' Br. at 12-15.  To avoid repetition, amici adopt and incorporate this analysis by reference.

In addition to TEA's extensive control over the content of the driver's education programming and its power to fine, suspend, or terminate the license of private driver education schools or individual providers, *see id.*, TEA receives substantial revenue from licensing its heavily-regulated curriculum to private driver education schools and teachers.  *See* TEX. EDUC. CODE § 1001.151 (setting out fees for initial licenses and annual renewal fees).  In TEA's Self-Evaluation Report to the Sunset Advisory Commission, presented September 1, 2011, the Agency reported that it collected $2,357,481.00 in Commercial Driver Training School Fees in FY 2010, pursuant to its general regulatory authority under TEX. EDUC. CODE § 1001.051.  *Texas Educ. Agency Self-Report*, Sunset Advisory Commission, 83rd Legislature (Sept. 1, 2011), at 48, Exhibit 9 (*available at https://www.sunset.texas.gov/reviews-and-reports/agencies/texas-education-*

6

*agency-tea,* last visited Sept. 11, 2014). This was the second largest item of Fee Revenue reported by the agency for FY 2010. *Id.* This is not a de minimis charge for providing certificates of completion; this is the price paid by the private driving schools and instructors to be licensed to provide TEA-approved course materials. TEX. EDUC. CODE § 1001.151.

There is nothing wrong with a state agency selling rights to provide state programming, but this type of "licensing" is not the licensing at issue in *Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1441-42 (D. Kan. 1994), or *Reeves v. Queen City Transp.,* 10 F. Supp. 2d 1181, 1187 (D. Colo. 1998).[3] In those cases, "The [agency] has not entered into a contract or other arrangement with [a private entity] to provide services to beneficiaries of a [state] program or activity." *Reeves*, 10 F. Supp. at 1185 (discussing *Tyler*, 849 F. Supp. at 1441-42). In *Tyler* and *Reeves*, the benefit that plaintiffs were allegedly denied was a benefit provided by commercial businesses, who were merely licensed to operate by the state. *Id.* In contrast, in this case TEA has licensed the commercial driver education schools to provide a service—state mandated driver education—that is intended to provide "aid, benefit, or service to beneficiaries of [the agency's] program." *Indep. Hous. Servs. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N. D. Cal., 1993). The

---

[3] While the "regulated monopoly" taxi medallion program at issue in *Noel* may at first glance seem factually closer to the fee/regulation structure at issue here, the *Noel* Court's analysis largely turned on the fact that the taxi industry is exempt from regulation under Title III of the ADA and thus cannot be compelled by a state agency to take on ADA duties. 687 F.3d at 73. The same concern played a role in the

7

state is free to enter into such arrangements, but "[t]he law is clear—the State Defendants may not contract away their obligation to comply with federal discrimination laws." *Castle*, 731 F.3d at 910 (citing *Henrietta D.*, 331 F.3d at 286).

### B.    TEA Is Required to Ensure Its Licensees Comply With Its Delegated Obligations Under Title II and Section 504

Multiple courts across the country have found that, when a state agency makes an agreement allowing a private entity to provide a benefit or service of the agency to the public, the agency "must ensure that its contracts are carried out in accordance with Title II." *Hunter*, 2014 U.S. Dist. LEXIS 114075 at *19-20 (collecting cases). This requires more than simply including language in a licensing agreement that the contractor will comply with federal law; the agency "must not only ensure by contract that the private entity with whom it contracts complies with Title II, but further, must ensure that the private agency complies with the contract." *James,* 1999 U.S. Dist. LEXIS 2565, *9 (E.D. N.C. Jan. 20, 1999). This requirement applies with equal force whether the agreement at issue is styled a contract, a license, or any other arrangement. 28 C.F.R. § 35.130(b)(1)(i).

TEA argues that requiring it to police the ADA and Rehabilitation Act compliance of private driver education facilities would amount to

8

"commandeering" the state agency to police private business activity to enforce federal law. Opening Br. at 26. But the duty to make driver education programs accessible to disabled Texans is a duty of the state agency, not a private business activity. *Hunter*, 2014 U.S. Dist. LEXIS 114075 at *19-20. The agency is not being commandeered to enforce federal law on private citizens; it is simply being required to comply with federal laws applicable to its own operations. *See Van Velzor v. City of Burleson*, 2014 U.S. Dist. LEXIS 122899, *22-24 (reconsidering earlier deference to state law enforcement priorities because "[i]n effect, the ADA 'impose[s] upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals' to avoid discrimination . . . . lack of enforcement of [anti-discrimination] laws violates the 'affirmative obligation'" owed by the public entity under Title II.) TEA's obligation to ensure that its licensed driver education schools and teachers provide the "TEA approved" curriculum in an accessible fashion is not an obligation to police the Title III obligations of the contractors, but to ensure that its own Title II obligations are being met. *See Kerr v. Heather Gardens Ass'n*, No. 09-cv-00409-MSK-MJW, 2010 U.S. Dist. LEXIS 99020, *35-36 (finding that a public agency's Title II duty could be predicated on the same facts as its' contractor's Title III duty, and that the agency's complete delegation to the contractor did not excuse the agency from its duty to comply with the statute).

9

As the *Kerr* court explained, the implementing regulations for Title II (which is coextensive with Section 504) are entitled to controlling weight unless they are arbitrary, capricious, or contrary to the statute. *Id.* at \*21-22 (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). The State has already asserted the implementing regulations are entitled to such authority in these proceedings. Opening Br. at 52. Those regulations provide that "A public entity, in providing any aid, benefit, or service, may not, directly or indirectly or through contractual, licensing, or other arrangements, on the basis of disability deny a qualified individual with a disability the opportunity to benefit from the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1)(i). The Appendix to this section of the Regulations further explains that "All governmental activities of public entities are covered, even if they are carried out by contractors." 28 C.F.R., Appx. A to Part 35. The public entity remains responsible for ensuring that Title II is satisfied, while the private entity remains subject to the separate, similar requirements of Title III. *Id.*

TEA is responsible for ensuring the accessibility of its programs and services under Title II of the ADA and Section 504 of the Rehabilitation Act. No court in the Nation has ever held that a state agency can abdicate this responsibility by contracting or licensing it away. *Hunter*, 2014 U.S. Dist. LEXIS 114075 at \*19-20 (collecting cases). TEA's contention it should not be responsible for

10

ensuring that the private driver education schools it licenses comply with Title III of the ADA neither excuses nor lessens TEA's obligation to comply with its own obligations under Title II. *Kerr*, 2010 U.S. Dist. LEXIS 99020 at *36.

## IV.    CONCLUSION

For the reasons outlined above and incorporated by reference to Appellees' Response Brief in this matter, the District Court's denial of TEA's motion to dismiss should be affirmed.    The question certified by the District Court: "whether the Agency's extensive and continuous involvement in the administration of the driver-education program makes it a 'service, program, or activity' of the Agency, which is within the scope of Title II of the ADA and Section 504" should be answered in the affirmative, and TEA should be held responsible for upholding its own obligations under Title II and Section 504, regardless of its arrangements with private licensees.

Respectfully submitted,

/s/ Jamie Richards Whitney

FULBRIGHT & JAWORSKI LLP
Jamie Richards Whitney
Texas State Bar No. 24056202
Robert R. Rouder
Texas State Bar No. 24037400

98 San Jacinto Blvd., Suite 1100
Austin, TX 78701

Tel: (512) 536-5298
Fax: (512) 536-4598
jamie.whitney@nortonrosefulbright.com
robert.rouder@nortonrosefulbright.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains **2469 words,** excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Circuit Rule 32.2.  The certificate was prepared in reliance on the word count option in the Microsoft Office word processing program used to prepare this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14 point font.

/s/ Jamie Richards Whitney
Jamie Richards Whitney
Counsel for Amici Curiae

Dated:  September 12, 2014

## CERTIFICATE OF SERVICE

I certify that on September 12, 2014, the above and foregoing brief was served, via the Court's CM/ECF Filing System, on the following registered CM/ECF users:

**Counsel for Defendant-Appellant**
Greg Abbott
Attorney General of Texas
Daniel T. Hodge
First Assistant Attorney General
Jonathan F. Mitchell
Solicitor General
Richard B. Farrer
Assistant Solicitor General
Office of the Attorney General
PO Box 12548 (MC 059)
Austin, Texas 787110-2548

**Counsel for Plaintiffs-Appellees**
Joe T. Sanders II
Olga Kobzar
Scott Douglass & McConnico, L.L.P.
600 Congress Ave., Suite 1500
Austin, TX 78701

Joseph P. Berra
James C. Harrington
Wayne Krause Young
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741-3438

/s/ Jamie Richards Whitney
Jamie Richards Whitney
Counsel for Amici Curiae